# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> v. <br><br> **JAMES HITSELBERGER,** <br><br> **Defendant.** | **Criminal Action 12-231 (RC)** |

## MEMORANDUM OPINION

When James Hitselberger traveled to Kuwait to collect his personal belongings from a United States military base, he was arrested on two counts of unlawful retention of national defense information, in violation of 18 U.S.C. § 793(e). On October 31, 2012, a magistrate judge ordered him detained without bond pending trial. Mr. Hitselberger has appealed that order of detention under 18 U.S.C. § 3145(b).

## I. BACKGROUND

James Hitselberger is a 56-year-old linguist. He is fluent in Arabic, Farsi, and Russian. In June 2011, he was hired by Global Linguist Solutions, which assigned him to work for the United States Navy at a base in Bahrain. Mr. Hitselberger regularly worked with classified information. The government alleges that, on two occasions earlier this year, Mr. Hitselberger unlawfully retained national defense information.

Immediately after the second alleged incident, Mr. Hitselberger submitted to two voluntary, non-custodial interviews with agents from the Naval Criminal Investigative Service. After the interviews concluded, the NCIS agents asked Mr. Hitselberger for a mailing address where they could send his personal property after he left the base. He provided a physical address in the upper peninsula of Michigan, a phone number associated with that address, and

two email addresses. Mr. Hitselberger asked the agents for contact information in case he needed to reach them, but did not receive it. He was permitted to return to his room and pack his bag, leaving behind many other personal belongings. He was told that Global Linguist Solutions had arranged for him to return to the United States, where he would be officially terminated because of the security violation. At that point, Mr. Hitselberger had not been charged with any crime, nor had he been informed that he was likely to be charged with a crime.

Mr. Hitselberger took a commercial flight from Bahrain to Frankfurt, Germany. Although he was scheduled to travel from Frankfurt to the United States, he instead checked himself into a Frankfurt hotel. He informed Global Linguist Solutions that he was feeling ill and would not be continuing home at that time.

Over the next six months, Mr. Hitselberger traveled throughout Europe. He used his United States passport and made no attempt to conceal his identity or his location as he traveled. To the contrary: he posted updates to Facebook with photographs and place descriptions, sent postcards to friends, used the email addresses that he had provided to the NCIS investigators (which they monitored) and drew on the bank account that he had held since 1984.

On August 6, 2012, the government filed a criminal complaint against Mr. Hitselberger and received a warrant for his arrest. The complaint and warrant were both sealed; he did not learn of them. Mr. Hitselberger continued to travel in Europe, and to communicate with Global Linguist Solutions about the personal belongings that he had left behind in Bahrain. In September 2012, he was told that he could retrieve his belongings from a United States military base in Kuwait. When he arrived at the Kuwaiti border, he was denied entry and arrested.

## II.  THE BAIL REFORM ACT OF 1984

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The scope of that exception is defined by the Bail Reform Act of 1984, which permits pretrial detention only when the safety of others or the appearance of the defendant cannot be reasonably assured. As one district judge has summarized:

> The Bail Reform Act of 1984 sets forth the limited circumstances in which a defendant may be detained before trial despite the presumption in favor of liberty. The Act provides that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). The Act also provides for pretrial detention when the Court finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant in court as required. *See* 18 U.S.C. § 3142(e); *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

*United States v. Hanson*, 613 F. Supp. 2d 85, 87–88 (D.D.C. 2009). The Bail Reform Act also provides instruction on how to analyze the necessity for pretrial detention. As the Circuit has described it:

> Section 3142(g) of the Act sets out the factors to be considered by the magistrate or judge in deciding whether available conditions will reasonably assure the defendant's appearance [or the safety of others]: the nature and circumstances of the offense, particularly its nonviolent nature; the weight of the evidence; the history and characteristics of the person, including his character, family ties, employment, length of residence in the community, community ties, past conduct, criminal history, and record of court appearances; and the danger the defendant poses to the community if released.

*United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (per curiam).

### III.  FIRST DETENTION HEARING

After a hearing at which both government and defense counsel proceeded by proffer, a magistrate judge found that Mr. Hitselberger presented both a danger to the community and a risk of flight, neither of which could be reasonably mitigated by any condition or combination of conditions of release.  As to the first statutory factor, she found that "the nature and circumstances of the offenses charged indicate that on more than one occasion, Defendant removed classified documents containing sensitive materials related to national defense from secure facilities."  She found that the weight of the evidence against Mr. Hitselberger was strong, and that his history and characteristics showed "a risk of fugitivity" because (as she concluded) he had "fled when confronted with an investigation, and remained abroad for almost eight months" and also had a demonstrated ability to live abroad on limited funds.  Finally, she found that Mr. Hitselberger "poses a danger to the community by potentially compromising national security" when he retained classified information.

### IV.  ARGUMENTS ON APPEAL

Mr. Hitselberger now appeals.  This court reviews such appeals *de novo*, and may hear additional evidence, *see, e.g.*, *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011); *Hanson*, 613 F. Supp. 2d at 88, which may be presented by way of proffer, *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (per curiam).  The court has reviewed documentary evidence submitted by both government and defense counsel and has heard oral argument, at which factual proffers were made.

Mr. Hitselberger first argues that because he no longer has access to classified information, he would present no danger to the community if released.  The government does not

contest the point. Thus, the only issue is whether any conditions of release could reasonably assure Mr. Hitselberger's appearance in court. The defendant must be released pending trial unless the court finds by a preponderance of the evidence that there is a serious risk that he will flee, and that no condition or combination of conditions could reasonably assure his appearance. *See United States v. Nwokoro*, 651 F.3d 108, 109 (D.C. Cir. 2011) (per curiam) (citing 18 U.S.C. § 3142(f)).

The government argues that Mr. Hitselberger has fled before and should be expected to flee again. Although it acknowledges that he was legally permitted to travel in Europe rather than returning home, the government argues that any reasonable person in Mr. Hitselberger's shoes would have known that he was facing a bad situation. It therefore follows, on the government's account, that Mr. Hitselberger's decision to remain abroad suggests an intention to evade the legal consequences of his actions. The government emphasizes Mr. Hitselberger's alleged lack of candor about both the security violations of which he is accused and his reasons for remaining in Frankfurt rather than continuing home, which it argues are further evidence of an intent to avoid legal consequences. The government argues that Mr. Hitselberger could travel through Europe undetected so long as he remained within the Schengen area in which passports are not checked, and that Interpol would not have issued a red notice nor would European countries have extradited someone charged with Mr. Hitselberger's offense—so he was effectively outside the reach of the American legal system during his travels. Although the government suggests that to arrest Mr. Hitselberger on a United States military base would also have been difficult, it does not offer any persuasive account of why a person evading American justice would have been willing to present himself to American officials in Kuwait. Nor does the

5

government claim that Mr. Hitselberger was aware that the sealed indictment charged him with an offense for which he could not be arrested in nor extradited from a foreign country, although it does suggest that people are generally aware that residing in a foreign country provides some protection from American criminal law.

Mr. Hitselberger's basic argument is that he was not a fugitive prior to his arrest, and that there is no good reason to think that he would flee now. His internet searches and correspondence (which the government monitored) did not indicate that he was looking for ways to evade the authority of the United States. Indeed, he attempted to contact American officials to inquire about the return of his personal belongings. Although his former employer may have wanted him to return to the United States to complete the formalities of his termination, he was (as the government concedes) under no legal obligation to do that. There is no evidence that he expected to be charged with any criminal offense, and he could not have known when charges were finally brought. Nor is there evidence that he knew that those charges would not lead to his arrest and extradition from most foreign countries. As far as he knew, Mr. Hitselberger was free to travel—which he did. And as he traveled, he kept in regular contact with many people through many means, openly used his United States passport, and was willing to go to a military base, which no reasonable fugitive would be likely to do.

## V. ANALYSIS

The court considers the factors set out in 18 U.S.C. § 3142(g). First, the crime alleged is not a crime of violence, nor does it involve any of the other factors set out in 18 U.S.C. § 3142(g)(1). The weight of the evidence against Mr. Hitselberger is difficult to assess at this point, as much of the evidence is classified and has not been produced to the court. *Cf.* 18

U.S.C. § 3142(g)(2). As noted above, the government does not argue that Mr. Hitselberger poses any danger to the community. *Cf.* 18 U.S.C. § 3142(g)(4).

The history and the characteristics of Mr. Hitselberger—especially his past conduct—are what is chiefly at issue here. *Cf.* 18 U.S.C. § 3142(g)(3). He has family ties to the Washington metropolitan region, including an aunt who is willing to take third-party custody of him pursuant to 18 U.S.C. § 3142(c)(1)(B)(i). He has no criminal history, nor any known history of drug or alcohol abuse, and the government has not suggested that he has missed any court proceedings. He is not currently employed, has some financial resources, and has demonstrated an ability to live abroad on those resources. But the court does not accept the government's argument that he was effectively a fugitive while traveling in Europe before his arrest. To be a fugitive, one must flee from something. The government suggests that Mr. Hitselberger fled "a bad situation." He clearly knew that an investigation was ongoing, and may well have hoped that it would all just blow over. But he was legally free to travel until the warrant for his arrest was issued, and the government made a calculated decision to keep the existence of that warrant a secret. There is, moreover, no evidence that Mr. Hitselberger understood that extradition treaties would not have covered the offense that he did not know he had been charged with. That he was willing to travel to a United States military base also strongly suggests that he was not attempting to evade American authority. To the contrary, the evidence suggests that Mr. Hitselberger was traveling openly, in frequent contact with friends, family, and former employer, and using the email accounts that he had provided to the military investigators (which they in fact monitored). His correspondence also indicates that he intended to return home. Because Mr. Hitselberger has provided some absurd explanations concerning his treatment of the classified information, the

7

court discounts his statements as to his motives.  But the documentary evidence is entirely consistent with his position.

Weighing the proffered evidence, the court acknowledges that Mr. Hitselberger presents some risk of flight.  He has considerable linguistic skills and a demonstrated ability to live abroad.  But the court does not accept the argument that he has previously fled, that he traveled abroad with the intent to escape the legal consequences of his actions.  Certainly the government has not proven by a preponderance of the evidence that Mr. Hitselberger presents such a serious risk of flight that no condition or combination of conditions could reasonably assure his appearance for trial.  Because that is the government's burden, the court will order Mr. Hitselberger released into the third-party custody of his aunt, to be confined in her home and monitored electronically.  Those conditions and others are set out in greater detail in the order that preceded this memorandum opinion.

The Bail Reform Act "speaks of conditions that will 'reasonably' assure appearance, not guarantee it."  *Xulam*, 84 F.3d at 444.  The court is satisfied that these conditions meet that standard.

Rudolph Contreras  
United States District Judge

Date: December 20, 2012